**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

REBECCA SANDS DEWEY,

Plaintiff,

vs.

MICHAEL CHERTOFF, SECRETARY
OF HOMELAND SECURITY,
TRANSPORTATION SECURITY
ADMINISTRATION,

Defendant.

No. C 04-3088-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING THE
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

—————————

**TABLE OF CONTENTS**

*I.* **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*II.* **ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
   *A. Standards For Summary Judgment* . . . . . . . . . . . . . . . . . . . . . . 12
   *B. Sexual Harassment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
      *1. Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . 14
      *2. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
         *a. Timeliness* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
         *b. Knowledge and remedial action* . . . . . . . . . . . . 19
         *c. Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
   *C. Retaliation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
      *1. Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . 21
      *2. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*III.* **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

An alleged rape by a co-worker is the genesis of this Title VII lawsuit for sexual harassment and retaliation brought by a federal employee against her employing agency. However, in his motion for summary judgment, the Secretary of the employing agency asserts that the plaintiff failed to initiate contact with an Equal Employment Opportunity counselor about her claim of sexual harassment within forty-five days of the alleged harassment, as required by 29 C.F.R. § 1014.105(a)(1); that the plaintiff cannot prove that the agency either knew or should have known of the unreported harassment, or that the agency failed to take prompt remedial action when it did finally learn of the alleged harassment; and that the plaintiff cannot prove her retaliation claim, because the agency had legitimate, non-discriminatory business reasons for terminating the plaintiff after her long, inadequately explained absence from work. The plaintiff counters that she was suffering from post-traumatic stress syndrome following the rape and harassment by the co-worker, that the agency knew about her medical and mental conditions, and that the agency not only failed to discipline the harasser adequately, but failed to follow through on proposed remedies and, instead, terminated her employment. The court must determine whether there are issues for trial on the present record.

## I.  INTRODUCTION

### A.  Procedural Background

Plaintiff Rebecca Sands Dewey filed her Complaint in this matter on November 9, 2004 (docket no. 2), naming the Transportation Security Administration (TSA) as the defendant, and alleging sexual harassment, retaliation, and constructive discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. As the

defendant asserts, and the plaintiff does not dispute, the proper defendant on Dewey's Title VII claims is the Secretary of the Department of Homeland Security, rather than the TSA, because the TSA is a unit of that Department. *See* 42 U.S.C. § 2000e-16(c) ("[A]n employee or applicant for employment, if aggrieved by the final disposition of his [administrative] complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant."); *see also Warren v. Department of the Army*, 867 F.2d 1156, 1158 (8th Cir. 1989) ("[S]ection 2000e-16(c) requires a plaintiff to name as defendant the head of the appropriate department or the head of the appropriate agency. By naming the Department of the Army as the sole defendant to his lawsuit, Warren failed to comply with this condition.").[1] At the time that Dewey filed her Complaint, the Secretary of the Department of Homeland Security was Tom Ridge, but he has since been succeeded by Michael Chertoff. Therefore, by operation of law, Michael Chertoff, in his capacity as the Secretary of the Department of Homeland Security, Transportation Security Administration, is substituted as the proper defendant in this matter. *See* FED. R. CIV. P. 43(c)(2) (providing for "automatic substitution" of a successor when a public officer who is a party to a proceeding ceases to hold office).

---

[1]The *Warren* decision holds that failure to name the proper defendant pursuant to 42 U.S.C. § 2000e-16(c) is a "defect" that "bars [the plaintiff's] action unless he may now amend his complaint to name the proper defendant and to have this amendment relate back to [a timely complaint]." *Warren*, 867 F.2d at 1158. However, in this case, the Secretary does not assert that the defect in naming an improper defendant bars Dewey's claims; rather, the Secretary has acquiesced in his substitution as the proper defendant. Therefore, the court deems the proper defendant to be the Secretary of Homeland Security, Transportation Security Administration, and the substitution of the proper defendant shall relate back to the filing of Dewey's Complaint.

Returning to Dewey's Complaint, Dewey alleges that, while she was employed as a screening supervisor at the Fort Dodge, Iowa, airport, in late 2002 and early 2003, she was sexually assaulted and sexually harassed by a co-worker, then retaliated against for complaining about the assault and harassment. Thus, in **Count I** of her Complaint, Dewey alleges sexual harassment in violation of Title VII; in **Count II**, she alleges retaliation—specifically, termination of her employment—for complaining about sexual harassment as alleged in Count I, also in violation of Title VII; and in **Count III**, she alleges constructive discharge resulting from the sexual harassment to which she was subjected. On each claim, she seeks damages for back pay, front pay, and severe emotional distress, as well as attorney fees. The Secretary filed an Answer And Affirmative Defenses on February 4, 2005 (docket no. 5), denying Dewey's claims and asserting, as affirmative defenses, that her Complaint fails to state claims upon which relief can be granted; that her claims are barred by her failure to initiate timely contact with an EEO counselor; that the Secretary's actions were based upon legitimate, non-discriminatory reasons; and that the Secretary's actions were based on legitimate and reasonable business factors.

This matter proceeded to discovery and is now set for trial to begin on March 27, 2006. However, on December 15, 2005, after an extension of time to do so, the Secretary filed a Motion For Summary Judgment (docket no. 13), which is now before the court and which, if granted in its entirety, would obviate the need for trial. Dewey filed a response to the Secretary's motion for summary judgment on January 12, 2006 (docket no. 16), in which she conceded that the Secretary is entitled to summary judgment on her constructive discharge claim in **Count III**, but resisted summary judgment on her sexual harassment and retaliation claims in **Counts I** and **II**, respectively. The Secretary filed a reply in further support of his motion on January 18, 2006 (docket no. 17). By order dated

February 6, 2006 (docket no. 18), the court set oral arguments on the Secretary's motion for summary judgment for February 16, 2006.

At the oral arguments, plaintiff Rebecca Sands Dewey was represented by Paul D. Lundberg of the Lundberg Law Firm, P.L.C., in Sioux City, Iowa.[2] The Secretary of the Department of Homeland Security was represented by Martha A. Fagg, Assistant United States Attorney, in Sioux City, Iowa, and Cicely Jefferson, who is of counsel for the TSA, was also present. Upon completion of the oral arguments, the Secretary's motion for summary judgment was fully submitted.

### B. Factual Background

The court will not attempt here a detailed dissertation of the undisputed and disputed facts in this case. Rather, the court will present sufficient of the facts, undisputed and disputed, to put in context the parties' arguments concerning the Secretary's motion for summary judgment.[3]

---

[2]Mohummed Sadden of South Sioux City, Nebraska, who also represents Dewey, did not participate in the oral arguments.

[3]Although Dewey submitted with her resistance a Statement of Facts In Resistance To Defendant's Motion For Summary Judgment, in addition to her response to the Secretary's Statement of Material Facts As To Which There Is No Dispute, the Secretary failed to respond to Dewey's statement of additional facts. *See* N.D. IA. L.R. 56.1(a)(3) (the papers of the party moving for summary judgment must include a "statement of material facts"), (b)(2)-(3) (the resisting party's papers must include both a "response to the statement of material facts" filed by the moving party, and "[a] statement . . . of additional material facts that the resisting party contends preclude summary judgment"), (d) (the moving party's reply must "expressly admi[t], den[y], or qualif[y] each of the resisting party's numbered statements of additional facts"). Pursuant to the applicable local rule, "[t]he failure to reply, with appropriate citations to the appendix, to an
(continued...)

The parties agree that Dewey was employed by the TSA from November 10, 2002, through July 3, 2003, as a supervisory transportation security screener at the Fort Dodge, Iowa, Municipal Airport. As part of her training for her airport screener position, Dewey received training about sexual harassment, including the procedures to follow to report violations of anti-discrimination and anti-harassment laws.

While Dewey was working as a screener at the Fort Dodge, Iowa, Municipal Airport, she lived in a motel room in Fort Dodge. On or about December 17, 2002, Torey Martin, a co-employee, came to Dewey's motel room and had sex with her. Dewey claims that the sexual encounter was forcible and against her will, *i.e.*, a rape, while Martin contends that the sexual encounter was consensual. Dewey contends that, on other unspecified dates in December 2002 and January 2003, Martin committed other acts of sexual harassment against her, which Martin denies. Dewey continued to have frequent contact with Martin at work until March 25, 2003, but has not alleged that Martin or anyone else subjected her to sexual harassment after January 2003.

Although Dewey saw her doctor, Dr. Greg Halbur, on December 20, 2002, three days after the alleged rape, she made no mention of the alleged rape by Martin, nor did she do so on three subsequent visits to Dr. Halbur prior to March 25, 2003. Dewey did not seek any other medical or mental health treatment for the alleged rape during those three months, either. However, Dewey asserts that, on March 21, 2003, she did tell screening manager Teri Neurendorf about the sexual harassment by Martin, and that

---

[3](…continued)
individual statement of material fact constitutes an admission of that fact." *Id.* at (d). Therefore, unless specifically disputed in the Secretary's reply brief, the court will consider the various facts asserted in Dewey's statement of additional facts to be admitted.

Neurendorf told her to file a sexual harassment complaint. Even then, Dewey did not file a harassment complaint with the TSA.

Instead, on March 25, 2003, Dewey left her job complaining that she was ill, even though she was scheduled to have a meeting that day about an unrelated matter with Kim Bakker, her direct supervisor. Dr. Halbur faxed the TSA a handwritten note on a prescription pad dated March 25, 2003, which stated, "Please excuse pt [patient] from work 3-25, 26, + 27/03 for medical reasons," Defendant's Appendix at 65, and another such note dated March 27, 2003, which stated, "Excused from work 3/25/03 thru 4/7/03. Return to work 4/8/03." Defendant's Appendix at 66. The first medical records related to this absence that are in the summary judgment record are dated March 27, 2003. *See* Defendant's Appendix at 76. Dr. Halbur testified in deposition that, when Dewey appeared for a doctor's visit on March 27, 2003, Dewey did not tell him that she had been raped. Defendant's Appendix at 62A. However, handwritten progress notes, by either Dr. Halbur or his nurse, note that Dewey "states under so much stress at work [because of] sexual harassment + assault," and typed notes from the same date state that Dewey was under "pressure" and "stress" from her female boss, "who has been very demanding," and from "sexual advances" by a married "male superior." Defendant's Appendix at 76.

Even if Dr. Halbur knew by late March of 2003 of Dewey's claim that she was raped in December 2002, Dewey admits that no one at the TSA learned of Dewey's claim that she had been raped or harassed by a co-worker until April 3, 2003, when Dewey's attorney at the time faxed a letter to Administrative Officer Phil Pitzen in Des Moines, Iowa. On April 4, 2003, Dewey's attorney faxed Pitzen another letter confirming details of a telephone conference between Pitzen and the attorney that day. On April 4, 2003, Pitzen commenced an investigation of Dewey's claim of rape by making arrangements to

meet with Dewey in Sioux City, Iowa, on April 6, 2003. After he interviewed Dewey in Sioux City on April 6, 2003, Pitzen interviewed Martin in Fort Dodge, Iowa, on April 7, 2003. Also on April 7, 2003, Pitzen contacted a detective with the Fort Dodge Police Department, because the Fort Dodge Police Department had also opened an investigation of the alleged rape, apparently on a complaint by Dewey.

The Fort Dodge Police Department completed its investigation two or three weeks later, with a recommendation that there was insufficient evidence to substantiate the claim of rape. Similarly, in June 2003, the Webster County Attorney's Office officially declined to proceed further with any prosecution of the case. The TSA's investigation also terminated about the end of May 2003. Ultimately, by "Letter of Written Counseling" dated June 3, 2003, the TSA disciplined Martin for inappropriate conduct while on official business, based on a finding that Martin had "admitted engaging in sexual relations" with Dewey in December of 2002, which had resulted in "considerable disruption and significant negative exposure and review of TSA by other agencies." Defendant's Appendix at 28. The "sexual relations" in question were not characterized in the disciplinary letter as either consensual or non-consensual, let alone as a sexual assault or rape. *Id*. Thus, Dewey complains that Martin was never actually disciplined for sexually assaulting or sexually harassing her.

The Secretary contends that, on or about April 2, 2003, prior to Dewey's report of the alleged rape to the TSA, but while she was off work for "medical reasons," Dewey's supervisor, Kim Bakker, had informed Dewey of an opening for a screening manager in Des Moines, but that Dewey told Bakker that she would not be submitting a résumé for that position. Dewey states that she does not recall turning down this alleged opportunity to transfer to a job assignment away from Martin, her alleged harasser. However, Dewey asserts that, at some time after she left her job on March 25, 2002, she told Pitzen and

Bakker that she could not return to her assigned duty station while Martin was still there. She also asserts that, during the April 6, 2003, interview, Pitzen suggested the possibility of transferring Dewey to a different position, so that she would not have to work with Martin, but Dewey contends that neither Pitzen nor anyone else at the TSA ever followed up on the suggestion to transfer her.

In addition to the excuses from work provided by Dr. Halbur dated March 25 and March 27, 2003, mentioned above, the TSA received excuses from work for Dewey on prescription pads from Dr. Halbur dated April 7, 2003, which excused Dewey from work from April 8 to April 22, 2003; April 15, 2003, which excused Dewy from work until May 7, 2003; May 6, 2003, which excused Dewey from work "until further notice"; May 20, 2003, which excused Dewey from work "for one week"; May 23, 2003, which stated that Dewey was "unable to return to work until further notice"; May 28, 2003, which stated that it was "unknown when patient will return to work"; and June 9, 2003, which stated that Dewey was "not to return to work until further notice." Defendant's Appendix at 65-73. The April 7, 2003, excuse was the first and only one from Dr. Halbur to identify the "medical reasons" for Dewey's absence as "Rape + assault." Defendant's Appendix at 67. The excuse from Dr. Halbur dated May 6, 2003, stated that Dewey "needs extended therapy," but did not explain for what medical or mental condition. Defendant's Appendix at 69. None of the other excuses from Dr. Halbur contains any explanation of the reasons Dewey was being kept off work. On the other hand, a "to whom it may concern" letter dated May 23, 2003, from a licensed social worker, Mr. James F. Anderson, which was apparently provided to the TSA, did state that Dewey was "being seen for post traumatic stress syndrome and is still in need of care" and that Dewey "d[id not] feel strong enough to work in a stressful situation." Plaintiff's Appendix at 37.

In April 2003, the TSA began requesting more information about Dewey's extended absence from work. By letter dated April 10, 2003, from Tony Gotto at the TSA to Dewey, the TSA provided Dewey with forms to file a workers compensation claim, which included requests for medical information. Defendant's Appendix at 39-40. Dewey disputes that sexual harassment can be the basis for a workers compensation claim. In a letter dated May 14, 2003, Pitzen informed Dewey that her absence had been long enough that she would require re-certification training. Defendant's Appendix at 41. The letter also specifically requested that Dewey "authorize Dr. Halbur, or whomever is your attending physician, to send me a letter no later than May 24, 2003, indicating a date at which point we could reasonably expect your return to service on a regular and full-time basis." *Id.* The letter also included a "Request for Medical Documentation—Information Sheet" for Dewey to provide to her physician to be used in completing her evaluation. Defendant's Appendix at 41-42. Dewey did not complete or return the forms. Although Dewey testified in deposition that "Dr. Halbur refused to turn [her medical records and medical assessment] over to the government," *see* Defendant's Appendix at 19-20, Dr. Halbur denies that Dewey ever requested such records or that he would have refused to turn them over, if Dewey had authorized their release. Defendant's Appendix at 61-64. Dewey also admits that she did not give Dr. Halbur a signed release and never asked him to complete a medical assessment.

By letter from Pitzen to Dewey dated May 29, 2003, the TSA extended the deadline for Dewey to provide a medical assessment to June 6, 2003, at Dewey's request, because Dewey had indicated that she was unable to obtain a medical assessment on short notice. Defendant's Appendix at 43. However, that letter also stated, "If the complete assessment has not been received by 6 June, and you will not report for duty as directed by your supervisor, then you will be considered Absent Without Leave (AWOL), and the agency

will assess your continued employment with the United States government." *Id.* Dewey admits that TSA policy permits termination of employees found to be AWOL and that she had been informed on more than one occasion that she could be terminated if she was found to be AWOL. *See* Defendant's Appendix at 49-50 (TSA policy concerning AWOL employees, noting that disciplinary action for AWOL employees may include "removal from Federal Service").

By letter dated July 2, 2003, from Timothy P. McDonald, the Federal Security Director, Dewey was notified that she was terminated from her employment with the TSA, effective at the end of business on the day that she received the letter, because she had "established a pattern of excessive absence that has caused disruption to [the TSA's] ongoing operations and contributed to delays in the screening process" and because she had failed "to provide medical documentation or return to work." Defendant's Appendix at 44-45.

Thereafter, on August 18, 2003, Dewey filed a Formal Complaint of Discrimination with the Department of Homeland Security, in which she alleged both sexual harassment and retaliation, the latter claim based on her firing despite having informed her superiors that she could not return to work where the perpetrator of the harassment was still employed. Plaintiff's Appendix at 1-4. Dewey contends, and the Secretary has failed to dispute, that the TSA conducted its investigation of her complaints in April, May, and June 2003, and accepted and reviewed her Formal Complaint without ever asserting that her complaints about harassment and retaliation were untimely. The final decision of the Department of Homeland Security on Dewey's Formal Complaint did not come until May 25, 2005, well after her judicial complaint in this action was filed, and that final decision simply dismissed her administrative complaint on the ground that the complaint was the subject of pending civil litigation. Plaintiff's Appendix at 21.

## II.  ANALYSIS

### A.  Standards For Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that a prosecuting or defending party may move, at any time, for summary judgment in that party's favor "as to all or any part" of the claims at issue.  FED. R. CIV. P. 56(a) (summary judgment for claimant) & (b) (summary judgment for defending party).  "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  As this court has explained on a number of occasions, applying the standards of Rule 56, the judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial.  *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir. 1990).  In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Quick*, 90 F.3d at 1377 (same).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue."  *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1107 (8th Cir. 1998); *Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir. 1993).  When a moving party has carried its burden under Rule 56(c), the party opposing summary judgment is required under Rule 56(e) to go beyond

the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324; *Rabushka ex. rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997), *cert. denied*, 523 U.S. 1040 (1998); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir. 1995); *Beyerbach v. Sears*, 49 F.3d 1324, 1325 (8th Cir. 1995). An issue of material fact is "genuine" if it has a real basis in the record. *Hartnagel*, 953 F.2d at 394 (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," *i.e.*, are "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Beyerbach*, 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir. 1997). Ultimately, the necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994).

The court will apply these standards to the Secretary's motion for summary judgment on Dewey's sexual harassment and retaliation claims.[4]

---

[4]As mentioned above, Dewey concedes that the Secretary is entitled to summary judgment on her claim that she was constructively discharged as the result of sexual harassment. Therefore, the court will not consider that claim further.

## B. Sexual Harassment

### 1.    Arguments of the parties

The Secretary seeks summary judgment on Dewey's sexual harassment claim, first, on the ground that Dewey's claim is time-barred, because Dewey failed to contact an Equal Employment Opportunity (EEO) counselor within forty-five days of the alleged harassment as required by 29 C.F.R. § 1614.105(a)(1). The Secretary points out that Dewey alleges that she was raped on December 17, 2002, and harassed in December 2002 and January 2003, but she admits that she did not contact an EEO counselor until April 3 or 4, 2003, when her attorney faxed to the TSA a letter providing notice of her sexual harassment claim. The Secretary also points out that Dewey has not offered any basis for finding that there was a "continuing violation" involving harassment into the forty-five day period before April 3, 2003, *i.e.*, after February 21, 2003. Therefore, the Secretary contends that it cannot be liable for harassment that occurred before the forty-five day notification period.

The Secretary also seeks summary judgment on Dewey's sexual harassment claim on the ground that Dewey fails to state a claim of sexual harassment. This attack on Dewey's sexual harassment claim has two prongs: (1) the TSA did not know about the alleged rape in December 2002 or the alleged harassment in December 2002 and January 2003 until long after it had occurred, so that Dewey's failure to inform the TSA of the first instance of harassment made it impossible for the TSA to know about and prevent subsequent harassment; and (2) the TSA took prompt remedial action once it was informed of the alleged harassment, by both investigating Dewey's claims and disciplining Martin, the alleged harasser, and then made concerted efforts to get Dewey back to work, which Dewey rebuffed.

In resistance, Dewey notes that the Secretary did not cite any cases in his initial brief holding that failure to comply with the forty-five-day reporting rule bars a subsequent civil action. Dewey asserts that there is no case holding that 29 C.F.R. § 1614.105(a)(1) is functionally akin to a statute of limitations. She also contends that the TSA investigated her complaints of sexual assault and harassment and that the Department of Homeland Security accepted her formal administrative complaint and began its investigation without ever asserting that her complaints about sexual harassment were untimely. Thus, Dewey contends that the Secretary has waived its present "untimeliness" argument.

As to the challenged elements of her sexual harassment claim, Dewey contends that the agency's response to her sexual harassment claim was inadequate, because the TSA never followed through on Pitzen's suggestion that Dewey could be transferred to a position away from her alleged harasser, and that the TSA never adequately disciplined the alleged harasser for sexually assaulting and harassing her. She also asserts that the TSA's attempts to force her back to work were misguided, where she was suffering from and still being treated for post-traumatic stress disorder related to the sexual assault and harassment. Thus, she contends that the TSA's efforts to get her back to work were not "remedial," but were attempts to lay the groundwork to discharge her.

In his reply, the Secretary asserts that several Circuit Courts of Appeals have held that an agency's acceptance and investigation of complaints of discrimination does not waive a defense to the untimeliness of the complaints. Thus, the Secretary contends that there has been no waiver of its timeliness defense to Dewey's sexual harassment claim. The Secretary also reiterates that Dewey has not pointed to any timely notification of an EEO counselor or anyone else that Dewey could reasonably have believed could properly receive a complaint of sexual harassment within the forty-five day reporting period.

## 2.    Analysis

### a.    Timeliness

The Eighth Circuit Court of Appeals quite recently reiterated that "the first step in the requisite administrative-exhaustion process" for a federal employee to assert a civil claim for harassment or discrimination is to "initiate contact" with an EEO counselor within forty-five days of alleged harassment or discrimination, pursuant to 29 C.F.R. § 1614.105. *Carroll v. Potter*, ___ F.3d ___, ___, 2006 WL 250479, *1 (8th Cir. Feb. 3, 2006) (*per curiam*); *Burkett v. Glickman*, 327 F.3d 658, 660 (8th Cir. 2003) ("Before the federal courts may hear a discrimination claim, an employee must fully exhaust her administrative remedies. For a federal employee, this requires, as an initial matter, that she 'initiate contact' with an Equal Employment Opportunity (EEO) counselor 'within 45 days of the date of the matter alleged to be discriminatory' or of the effective date of the alleged discriminatory personnel action, 29 C.F.R. § 1614.105(a)(1); *see also Jensen v. Henderson*, 315 F.3d 854, 858 (8th Cir. 2002)."); *Bailey v. United States Postal Serv.*, 208 F.3d 652, 654 (8th Cir. 2000) (federal employees who wish to sue the United States for employment discrimination must exhaust available administrative remedies, including the forty-five-day contact requirement).  Although "initiate contact" is not defined in the regulation, "the EEOC has issued a number of decisions that interpret 'initiate contact' to require that the employee 'contact an agency official logically connected to the EEO process and exhibit an intent to begin the EEO process.'"  *Nygren v. Ashcroft*, 109 Fed. Appx. 816, 2004 WL 1879687, *2 (8th Cir. 2004) (slip op.) (quoting *Allen v. Runyon*, Doc. No. 5950933, 1996 WL 391224 at *3 (E.E.O.C. July 8, 1996), and citing *Pauling v. Secretary of the Dep't of Interior*, 960 F. Supp. 793, 803 (S.D.N.Y.1997), as collecting cases using this definition).

The Eighth Circuit Court of Appeals has also expressly held that failure to meet this first step in the administrative exhaustion process bars a federal employee from obtaining redress in a civil action for alleged discrimination during his or her tenure as a federal employee. *Carroll*, ___ F.3d at ___, 2006 WL 250479 at *1; *Burkett*, 327 F.3d at 660 (where the federal employee failed to make timely contact with an EEO counselor concerning claims of discrimination, "[t]he district court . . . correctly declined to consider claims for incidents that occurred outside the relevant [forty-five-day] time period"). Indeed, the Eighth Circuit Court of Appeals had so held even before Dewey alleges that she was first harassed in this case. *See Jensen v. Henderson*, 315 F.3d 854, 858 (8th Cir. 2002) ("In order for a federal employee to sue under Title VII, the employee must satisfy certain time limitations," including the requirement that the employee "initiate contact with an EEO counselor within forty-five days of the alleged discriminatory conduct") (citing *Brown v. General Serv. Admin.*, 425 U.S. 820, 833 (1976), and 29 C.F.R. § 1614.105(a)(1)).

In this case, Dewey does not allege any harassment after January 2003, yet her earliest report of harassment to any other TSA employee did not occur until March 21, 2003, when she told screening manager Neurendorf that she was being sexually harassed. The report to Neurendorf was not within forty-five days of any alleged harassment, nor was Neurendorf "'an agency official logically connected to the EEO process,'" such that a report to her did not "'exhibit an intent to begin the EEO process.'" *Nygren*, 109 Fed. Appx. 816, 2004 WL 1879687 at *2 (quoting *Allen*, Doc. No. 5950933, 1996 WL 391224 at *3). Moreover, Dewey did not report harassment to anyone who could reasonably have satisfied the requirements of 29 C.F.R. § 1614.105(a)(1) until April 3 or 4, 2003, when her attorney faxed letters to the TSA administrative offices in Des Moines, but that report, too, was more than forty-five days after the last date on which Dewey now alleges that she

17

was sexually harassed. Because none of the dates on which Dewey was allegedly harassed fell within forty-five days of Dewey's "contact" dates with TSA officials about harassment, there are no genuine issues of material fact that Dewey's claim of sexual harassment is untimely.

The Eighth Circuit Court of Appeals has noted two possible bases for relief from the forty-five-day contact requirement: (1) circumstances beyond the employee's control that prevented the employee from contacting an EEO counselor within the time limits, pursuant to 29 C.F.R. § 1614.105(a)(2); and (2) equitable tolling, arising from circumstances truly beyond the employee's control, citing *Briley v. Carlin*, 172 F.3d 567, 570 (8th Cir. 1999). *See Carroll*, ___ F.3d at ___, 2006 WL 250479 at *1. However, Dewey does not assert that her medical or mental condition or any other circumstance truly beyond her control prevented her from meeting the timely contact requirement. Indeed, she admits that she had been trained in how to report sexual harassment claims and to whom such reports should be made. Thus, there are no genuine issues of material fact as to tolling or any other exception to the timeliness requirements in this case.

On the other hand, Dewey does argue that the Secretary has waived the untimeliness argument he now makes by accepting and investigating her claims of sexual harassment. However, the Secretary is correct that all of the Circuit Courts of Appeals to consider the question have held that a federal agency does not waive an untimely request for EEO counseling merely by receiving and investigating a federal employee's complaint of discrimination. *See, e.g., Horton v. Potter*, 369 F.3d 906, 911(6th Cir. 2004) (so holding and citing the same holding by five other Circuit Courts of Appeals: *Belgrave v. Pena*, 254 F.3d 384, 387 (2d Cir. 2001); *Ester v. Principi*, 250 F.3d 1068, 1072 n. 1 (7th Cir. 2001); *Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997); *Rowe v. Sullivan*, 967 F.2d 186, 191 (5th Cir. 1992); and *Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 414 (9th

Cir. 1985)).  Thus, this court finds that, as a matter of law, the TSA's acceptance and investigation of Dewey's untimely complaint of sexual harassment did not waive the Secretary's present assertion of untimeliness as a bar to Dewey's civil suit for sexual harassment.

Because there are no genuine issues of material fact that Dewey did not make any timely contact with an EEO counselor concerning her claim of sexual harassment, the Secretary is entitled to summary judgment on Dewey's sexual harassment claim.  *Celotex Corp.*, 477 U.S. at 323 (if a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law").  Nevertheless, the court will consider the Secretary's alternative grounds for summary judgment on this claim.

### b.    *Knowledge and remedial action*

The Secretary also argues that Dewey cannot generate genuine issues of material fact on all of the elements of her *prima facie* case of sexual harassment.  As the Eighth Circuit Court of Appeals has repeatedly explained, "To establish a prima facie case of sexual harassment, [an employee] must show:  [1] membership in a protected group; [2] unwelcome harassment; [3] harassment was based on sex; [4] the harassment affected a term, condition, or privilege of employment; and [5] [the employer] knew or should have known of the harassment and failed to take proper remedial action."  *Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1047 (8th Cir. 2005) (citing *Erenberg v. Methodist Hosp.*, 357 F.3d 787, 792 (8th Cir. 2004)).[5]  The Secretary asserts that Dewey cannot prove or

_____

[5]Dewey does not assert that Martin was a supervisor, such that the Secretary would be liable for sexual harassment if the harassment either resulted in a tangible employment action or the employer failed to prove the *Ellerth/Faragher* affirmative defense.  *See, e.g.,*

(continued...)

generate any genuine issues of material fact on the last element.

It is true that, "'[o]nce an employer becomes aware of sexual harassment, it must promptly take remedial action which is reasonably calculated to end the harassment,'" *Tatum v. Arkansas Dep't of Health*, 411 F.3d 955, 959 (8th Cir. 2005) (quoting *Kopp v. Samaritan Health Sys., Inc.*, 13 F.3d 264, 269 (8th Cir. 1993)), and that Dewey challenges the sufficiency of the TSA's "remedial action" in response to her complaint of sexual harassment. However, Dewey overlooks the first part of the fifth element of her claim: proof that the employer "knew or should have known of the harassment." *See Kratzer*, 398 F.3d at 1047. Dewey has pointed to absolutely no part of the record that suggests that the TSA knew or should have known of either the alleged sexual assault by Martin or any of the other alleged harassment by Martin at the time that it happened, nor has Dewey pointed to any evidence that there was any basis for the TSA to anticipate, *i.e.*, from which it "should have known," before it happened, that such harassment was likely. Thus, Dewey has failed to generate a genuine issue of material fact on an essential element of her claim of sexual harassment with respect to which she has the burden of proof, and the Secretary is, consequently, "entitled to judgment as a matter of law" on that claim. *Celotex Corp.*, 477 U.S. at 323.

### c. Summary

In summary, Dewey made no timely contact with an EEO counselor concerning her sexual harassment claim, and her argument that the untimeliness of her administrative complaints has been waived fails as a matter of law. Moreover, Dewey cannot generate

---

[5](…continued)
*Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 747 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). Thus, the "knew or should have known" standard for employer liability for co-worker harassment is applicable here.

any genuine issue of material fact on the last element of her sexual harassment claim, that is, that the Secretary either knew or should have known of the harassment at the time, or should somehow have anticipated that harassment. Therefore, on either of these alternative grounds, the Secretary is entitled to summary judgment on Dewey's sexual harassment claim.

### C. Retaliation

In addition to her sexual harassment claim, Dewey asserts, in **Count II** of her Complaint, that she was retaliated against by the TSA for complaining about sexual harassment. Specifically, she alleges that she was fired on July 2, 2003, as the result of the complaints about sexual harassment that she made to the TSA on April 3 and 4, 2003. The Secretary has also moved for summary judgment on this claim.

#### 1.    Arguments of the parties

The Secretary disputes Dewey's ability to show any causal connection between her report of alleged sexual harassment and her termination three months later. Instead, the Secretary argues that a three-month delay is too long, as a matter of law, to establish the necessary "causal connection" between protected activity and alleged retaliation. The Secretary also argues that there is simply no evidence linking Dewey's termination to her earlier complaint of sexual harassment; rather, the Secretary argues that the record shows, beyond dispute, a concerted effort by the TSA to get Dewey back to work. Next, the Secretary argues that Dewey cannot show that the reasons that the TSA has given for terminating her were a pretext for retaliation. Instead, the Secretary argues that the record shows, beyond dispute, that Dewey failed to comply with any of the reasonable opportunities that the TSA gave her to return to her position and to provide necessary medical documentation and an assessment of her medical condition so that she could

continue her leave from work. Finally, the Secretary contends that there is no indication that the TSA did anything other than follow its established policies in firing Dewey for excessive absences and for being AWOL for an extended period of time.

In her resistance, Dewey first argues that, even if untimely reporting to the agency stands as a bar to her sexual harassment claim, there is no dispute that her retaliation claim was timely, because she was fired on July 2, 2003, and she filed a formal administrative complaint alleging retaliatory firing on August 18, 2003.[6] However, the court cannot read the Secretary's motion to seek summary judgment on Dewey's retaliation claim on the ground that the retaliation claim was untimely. Dewey's more responsive argument in resistance to the Secretary's motion for summary judgment on her retaliation claim is that there are genuine issues of material fact concerning a causal connection between her complaint about sexual harassment and her termination, because she had repeatedly provided doctor's excuses for her absences. Thus, she contends that the sufficiency of the documentation of her claims for medical leave should be a jury question, and as a consequence, the question of whether her failure to provide specific documentation was a pretext for a retaliatory discharge should also be a question for the jury. Dewey contends that, coupled with this evidence of retaliatory intent, there is evidence of the failure of the TSA to follow through on suggestions that she could transfer to another position to avoid working with her alleged harasser, which she contends also permits an inference of retaliatory intent.

---

[6]Dewey's formal complaint was filed within forty-five days of her allegedly retaliatory termination only because the forty-fifth day after her termination fell on a weekend, while August 18, 2003, the day she filed her formal complaint, fell on the following Monday.

## 2. *Analysis*

The issues in this case are, in many ways, comparable to those addressed in a recent case before this court, *Gordon v. Gerard Treatment Programs, L.L.C.,* 390 F. Supp. 2d 826 (N.D. Iowa 2005), which involved alleged retaliation for asserting rights to leave under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601-2654. The results in the two cases, however, could not be more different.

In *Gordon*, this court reiterated that, "'[t]o establish a prima facie case of retaliation, [the plaintiff] must show [1] that he exercised rights afforded by the Act, [2] that he suffered an adverse employment action, and [3] that there was a causal connection between his exercise of rights and the adverse employment action.'" *Gordon*, 390 F. Supp. 2d at 837 (quoting *McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 1002 (8th Cir. 2005)). This court also noted that, "as the Eighth Circuit Court of Appeals has explained, 'the McDonnell Douglas battle is only begun with the prima facie case. If the employer comes forward with evidence of a legitimate, nondiscriminatory reason for its treatment of the employee, the employee must then point to some evidence that the employer's proffered reason is pretextual.'" *Id.* (quoting *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002).

As to the "causal connection" element, the one also in dispute here, this court noted,

> [T]he Eighth Circuit Court of Appeals recognized that "the kind of causal connection required for a prima facie case is not 'but for' causation, but rather, a showing that an employer's 'retaliatory motive played a part in the adverse employment action.'" *McBurney*, 398 F.3d at 1003 (quoting *Kipp v. Missouri Highway & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002)). Also, "[a]lthough not dispositive, the time lapse between an employee's protected activity and the employer's

adverse action is an important factor when evaluating whether a casual connection has been established." *Id.* (noting that the court had previously held that a two-month interval between protected activity and termination "diluted any inference of causation," so that the six month interval in the case then before the court was simply too long for the inference of causation to arise); *but see Smith*, 302 F.3d at 832 ("We have discounted, albeit with qualification, the possibility that mere temporal proximity between protected act and adverse employment action can establish the necessary causal connection: 'Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation.'") (quoting *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir.) (*en banc*), *cert. denied*, 528 U.S. 818, 120 S. Ct. 59, 145 L. Ed. 2d 51 (1999)). The Eighth Circuit Court of Appeals has explained that the key to determining whether temporal proximity is or is not enough, standing alone, to show "causation" appears to be "the length of time between protected activity and adverse action." *Smith*, 302 F.3d at 833. Thus, "'[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close.'" *Id.* (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (*per curiam*), with internal quotation marks omitted).

*Gordon*, 390 F. Supp. 2d at 838.

While this court held in *Gordon* that the "very close" proximity between the end of the plaintiff's FMLA leave and her termination—just days—did give rise to an inference of causal connection, and hence, retaliatory intent, *id.* at 838-39, there is no such "very close" proximity here—where the allegedly retaliatory termination on July 2, 2003, came three months after Dewey notified the TSA of her claim of sexual harassment on April 3

or 4, 2003. Nevertheless, the court is unwilling to hold that any particular time period between protected activity and allegedly retaliatory action is sufficient, as a matter of law, to break the causal connection and defeat a retaliation claim, for fear of inviting employers to wait just so long as is required to bar a retaliation claim by such a judicial fiat before firing employees who have asserted their rights. Under the circumstances, suffice it to say that the long delay between the protected activity and the allegedly retaliatory termination in this case is such that there is no inference of a causal connection between the two arising merely from "temporal proximity."

Moreover, the challenged element of Dewey's *prima facie* case of retaliation is not cast in terms of "temporal proximity," but in terms of "causal connection." *See id.* at 837. In *Gordon*, even though the court found "very close" temporal proximity between the protected activity and the plaintiff's termination, the court nevertheless also considered whether there was an "'extra quantum of evidence' that may satisfy the causation requirement." *Gordon*, 390 F. Supp. 2d at 839 (quoting *Smith*, 302 F.3d at 832). Here, contrary to Dewey's assertions, there is no "extra quantum of evidence" to suggest causal connection, because the record shows that the TSA was making reasonable efforts to keep Dewey employed, while Dewey was making no comparable effort to provide even minimal cooperation with the TSA's attempts to re-train and re-certify her and to obtain medical documentation and assessments that were required to continue her leave. While Dewey hangs her hat on the failure of the TSA to make good on suggestions that she could transfer to a position away from her alleged harasser, the court finds this evidence insufficient to generate a genuine issue of material fact as to causal connection, where Dewey was showing no cooperation with attempts to maintain her employment or to obtain re-training and re-certification, because no employer could reasonably be expected to promise a different position to an employee who had not fulfilled the requirements for continued

employment. Thus, the lack of temporal proximity here and the lack of any other evidence of retaliatory intent together preclude any inference of a causal connection between Dewey's complaints about sexual harassment and her termination.

Next, as in *Gordon*, the Secretary has made a showing of legitimate reasons for terminating Dewey. *See Gordon*, 390 F. Supp. 2d at 839 (finding "legitimate" the employer's assertion that the plaintiff was fired upon the expiration of her FMLA, because she had not provided a required fitness-for-duty certification). The reasons offered by the Secretary here, which the court also finds are "legitimate," are the Secretary's assertion that Dewey was fired, because she failed to provide requested documentation and assessment of her medical condition, as requested twice in May 2003, and because she failed to appear for duty as ordered by her supervisor.

However, unlike the plaintiff in *Gordon*, Dewey has failed to undermine those legitimate, non-discriminatory reasons by showing either pretext or that retaliatory animus is the true reason for Dewey's termination. *Compare id*. at 840-43. For example, in *Gordon*, the court found that there was evidence sufficient to generate genuine issues of material fact that the employer's proffered legitimate explanation was still merely pretextual. That evidence included the lack of any contemporaneous assertion of the lack of a fitness-for-duty certification as a ground for termination, in contrast with the employer's heavy reliance during litigation on the lack of the fitness-for-duty certification as justifying its actions; the lack of sufficient basis for asserting that the lack of a fitness-for-duty certification was uniformly required; and the employer's violation of its own policy with regard to restoration of the plaintiff to duty. *Id*. at 840-42. There was also further evidence of retaliatory intent, including evidence that the plaintiff had promised before the due date specified by the employer that she would provide a fitness-for-duty certification within a few days after the due date, which was the soonest she could schedule

a doctor's appointment; evidence that the plaintiff had, in fact, provided the promised certification just days after she was terminated; and evidence that the decision-maker rejected the fitness-for-duty certification as "unacceptable" when it came, but testified that she did not know what she would have done about the plaintiff's continued employment had the certification been "acceptable." *Id.* at 842-43. In contrast, here, at the time of Dewey's termination, the TSA expressly relied on Dewey's failure to provide requested medical documentation and a medical assessment as well as her continued failure to return to work as ordered as grounds for her termination, and the TSA relies on precisely those same justifications again during this litigation; the obligation to provide such documentation was expressly stated in TSA policies and in letters to Dewey, and those letters also warned Dewey of the consequences of failure to comply; Dewey's termination was consistent with the policies stated in the TSA policy manual; and the TSA granted Dewey an extension of time to provide the requested documentation when Dewey asked for more time, but Dewey never provided (or even requested from her doctor that he provide) the necessary documentation or assessment. Under the circumstances presented here, there is no reasonable inference of either pretext or retaliatory intent on the part of the TSA.

Because Dewey cannot generate the necessary genuine issues of material fact on either the causal connection element of her *prima facie* case of retaliation or on the pretextual nature of the TSA's proffered legitimate, non-discriminatory reasons for firing her, the Secretary is entitled to summary judgment on Dewey's retaliation claim, as well as on her sexual harassment claim. *Celotex Corp.*, 477 U.S. at 323 (if a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law").

### III.  CONCLUSION

The court finds, first, that the proper defendant in this action is Michael Chertoff, in his capacity as the Secretary of the Department of Homeland Security, Transportation Security Administration, and that he should be substituted as the proper defendant in this matter, with the substitution relating back to the filing of Dewey's Complaint.  Next, as a matter of law, Dewey cannot proceed on her sexual harassment claim, because she failed to initiate contact with an EEO counselor or any other appropriate person at the TSA regarding her sexual harassment claim within forty-five days of the alleged harassment, as required by 29 C.F.R. § 1014.105(a)(1).  In the alternative, the court concludes that Dewey has failed to generate any genuine issues of material fact that the TSA knew or should have known about the alleged sexual assault or sexual harassment until months after those incidents occurred, so that Dewey cannot prove an essential element of her sexual harassment claim.  As to her retaliation claim, Dewey has failed to generate genuine issues of material fact on the essential element of a causal connection between her complaints about sexual harassment and allegedly retaliatory termination to sustain a *prima facie* case of retaliation, but even if she has, she has failed to generate genuine issues of material fact that the TSA's proffered legitimate, non-discriminatory reasons for terminating her were pretexts for retaliation.  Finally, Dewey concedes that the Secretary is entitled to summary judgment on her constructive discharge claim, so that no claims remain for trial.

THEREFORE,

1.      Michael Chertoff, in his capacity as the Secretary of the Department of Homeland Security, Transportation Security Administration, is substituted as the proper defendant in this matter, and said substitution relates back to the filing of Dewey's Complaint.

2.     The Secretary's December 15, 2005, Motion For Summary Judgment (docket no. 13) is **granted**.   Accordingly, judgment shall enter in favor of the Secretary and against Dewey.

**IT IS SO ORDERED.**

**DATED** this 21st day of February, 2006.

MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA